J-A25035-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FREDERICK LEWIS BILL, JR. | : | |
| | : | |
| Appellant | : | No. 963 MDA 2020 |

Appeal from the Order Entered July 10, 2020
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0006436-2001

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FREDERICK LEWIS BILL, JR. | : | |
| | : | |
| Appellant | : | No. 964 MDA 2020 |

Appeal from the Order Entered July 10, 2020
In the Court of Common Pleas of Berks County
Criminal Division at No(s): CP-06-CR-0003818-2005

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: JANUARY 5, 2021**

Appellant, Frederick Lewis Bill, Jr., appeals from the order entered in the Berks County Court of Common Pleas, which denied his emergency petition for compassionate release, pursuant to 42 Pa.C.S.A. § 9777. We affirm.

The relevant facts and procedural history of this case are as follows. On

May 28, 2002, Appellant pled guilty at docket CP-06-CR-6436-2001 ("docket 6436-2001"), to involuntary deviate sexual intercourse by forcible compulsion, aggravated indecent assault, and corruption of minors. Those charges involved Appellant's offenses on his seven (7) year old adopted daughter, K.R. The court sentenced Appellant to an aggregate five (5) to ten (10) years in state prison, and he was deemed a sexually violent predator.

On October 3, 2005, Appellant pled guilty at docket CP-06-CR-3818-2005 ("docket 3818-2005"), to rape of a person less than thirteen (13) years old and involuntary deviate sexual intercourse with a person less than thirteen (13) years old. Those charges involved Appellant's offenses against a second adopted daughter, who also has the initials K.R. The court sentenced Appellant to an aggregate five (5) to ten (10) years' incarceration, consecutive to the sentence at docket 6436-2001.

Appellant sought parole in September of 2017, but the parole board denied his request due to Appellant's risk to the community, failure to demonstrate motivation for success, and refusal to accept responsibility for the offenses committed. (***See*** Commonwealth's Hearing Exhibit C-1, dated 7/7/20). In September of 2019, Appellant was diagnosed with amyotrophic lateral sclerosis ("ALS"). As a result of his disease, Appellant is unable to move half of his body. The medical unit of SCI-Mahoney currently treats Appellant. On June 25, 2020, Appellant filed an emergency petition requesting a compassionate release for out-patient hospice care in his wife's home. The

court held a hearing on Appellant's petition on July 7, 2020. On July 10, 2020, the court denied relief.

On July 22, 2020, Appellant filed timely notices of appeal at each underlying docket. The court did not order a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed none. Appellant subsequently filed a motion to consolidate the appeals, which this Court granted on August 6, 2020.

Appellant raises one issue on appeal:

> Did the [trial court] err and abuse [its] discretion in not releasing … Appellant … from state prison to a hospice pursuant to the Mercy Release Statute under 42 Pa.C.S.A. [§] 9777 when [the trial court] found [Appellant] had proven by clear and convincing evidence the factors under the statute to be released since [Appellant] is terminally ill with amyotrophic lateral sclerosis (ALS) disease, is not ambulatory, will not live for more than six months and will be under the care of a licensed hospice and the prison was not able to provide the same level of treatment? ***See*** 42 Pa.C.S.A. [§] 9777(a)(2). Did [the trial court] abuse its discretion in not releasing [Appellant] when the victim, K.R., now an adult, who was one of the victims of [Appellant's] crime, objected to his release, particularly when his release would not place her in any danger, when [Appellant] has already served 18.5 years of [a] maximum 20 year sentence and would be released in 16-17 months because he would have served his maximum sentence? Is it an abuse of discretion to deny a mercy release when all conditions under the statute for release have been met, because the victim still objects? [The trial court] found [Appellant] had proven all conditions for his release under the statute, but denied [Appellant's] release due to the objection of [one of the victims], K.R.

(Appellant's Brief at 5-6).

Appellant alleges the court erred in denying his petition for

- 3 -

compassionate release because he met all of the conditions required under the statute. Appellant contends the court improperly considered the pain and trauma his criminal conduct caused the victims. Appellant concludes the court abused its discretion by denying his petition, and this Court must reverse. We disagree.

Our standard of review of the denial of a petition for compassionate release is to decide if the court properly exercised its discretion or if it committed an abuse of discretion. *Commonwealth v. Folk*, 40 A.3d 169 (Pa.Super. 2012). "An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record." *Commonwealth v. Belknap*, 105 A.3d 7, 10 (Pa.Super. 2014), *appeal denied*, 632 Pa. 667, 117 A.3d 294 (2015). "[I]f in reaching a conclusion the trial court [overrides] or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error." *Id.*

The Pennsylvania Sentencing Code defines the requirements for a compassionate release into a hospice,[1] in relevant part, as follows:

### § 9777. Transfer of inmates in need of medical treatment

---

[1] "Hospice care location" is defined as the following: "[a] home, independent living environment or inpatient setting that provides a coordinated program of palliative and supportive services through a licensed hospice care provider." 42 Pa.C.S.A. § 9777(g).

- 4 -

**(a) Inmates committed to custody of department**.—If an inmate is committed to the custody of the department, the department, the inmate or a person to whom the court grants standing to act on behalf of the inmate may petition the sentencing court to temporarily defer service of the sentence of confinement and temporarily remove the inmate committed to the custody of the department, or other facility, for placement in a hospital, long-term care nursing facility or hospice care location. The following shall apply:

\* \* \*

(2)   The sentencing court may approve the petitioner's request to temporarily defer service of the sentence of confinement in order for the inmate to receive care from a licensed hospice care provider, proposed by the petitioner and subject to electronic monitoring by the department, if all of the following are established by clear and convincing proof:

(i)   The inmate is terminally ill, not ambulatory and likely to die in the near future.

(ii)   The licensed hospice care provider can provide the inmate with more appropriate care.

(iii)   Appropriate medical care and palliative and supportive services will be provided by the licensed hospice care provider at the proposed hospice care location.

(iv)   The placement of the inmate in the proposed, licensed hospice care location does not pose an undue risk of escape or danger to the community. In making this determination, the sentencing court shall consider the inmate's institutional conduct record, whether the inmate was ever convicted of a crime of violence, the length of time that

the inmate has been imprisoned and any other factors the sentencing court deems relevant.

(v) The licensed hospice care provider has agreed to notify the department and the sentencing court of any material changes in the health status of the inmate, the nature of the hospice care provided or other information required by the department or the sentencing court.

(vi) Each agency representing the Commonwealth at a proceeding which resulted in an order committing or detaining the inmate, the State or local correctional facility housing the inmate and any registered crime victim have been given notice and an opportunity to be heard on the petition.

42 Pa.C.S.A. § 9777(a)(2)(i-vi).

For a petitioner to receive relief under this statute, each of the above six requirements must be proven by clear and convincing evidence. **See id.** Even if a petitioner establishes all of the requirements listed above, the plain language of the statute provides the sentencing court with the discretion to grant or deny a petitioner's release to a hospice care provider. **See** 42 Pa.C.S.A. § 9777(a)(2) (stating: "The sentencing Court **may** approve the petitioner's request to temporarily defer service of the sentence of confinement … if all of the following are established by clear and convincing proof") (emphasis added).

Instantly, the court analyzed Section 9777(a)(2) and it initially found:

1) Appellant is terminally ill, not ambulatory and is likely to die within six months; 2) SCI-Mahoney's medical unit cannot provide Appellant with the same level of care as Leigh Valley Health Network ("LVHN"), his proposed hospice choice;[2] and 3) LVHN could provide palliative and supportive services. (***See*** Trial Court Opinion, filed July 10, 2020, at 4-5).

Regarding the fourth requirement, one of the victims testified at the July 7, 2020 hearing, indicating that she spoke for herself and her sister, the other victim, who was not present. (***See*** N.T. Hearing, 7/7/20, at 58). She described the effect and impact Appellant's sexual assaults had on her and her sister as follows:

> While I am aware that [Appellant] does not have long left, in my mind he is dangerous. [Appellant] did unspeakable things to me from the ages of five [5] through eight [8] years along with my brother and sister.
>
> Since [Appellant's] incarceration he has made no attempt to better himself or shown any remorse for what he's done. He's torn my family apart and ruined my childhood/life by things such as giving me severe PTSD. The emotional trauma alone is astronomical.

(***Id.*** at 59).

Further, this victim explained how she reacted after receiving notice of Appellant's petition:

> I immediately broke down, didn't even make it to the end of

---

[2] Appellant proposed that he would reside at his wife's home and LVHN would provide services at her home, until his disease progressed to the point where home care would be insufficient and he would need to reside at a dedicated in-patient care facility.

the phone call. I felt like I was having a severe panic attack. And then the nightmares started back up. And the day following it, I have been having terrible flashbacks. I describe them as living nightmares where I get pulled in my mind back to what happened and I relive everything from feeling it to experiencing the same emotions. It is an absolutely terrifying experience. And it just reminded me of how traumatic my childhood actually was.

(***Id.*** at 61).

Consequently, the court noted the following concerns regarding the fourth requirement under Section 9777(a)(2):

This factor is particularly concerning to the [trial c]ourt. [Appellant's] sentence is ten [10] to twenty [20] years' incarceration. [Appellant] has already served about eighteen [18] years of his sentence. The Board of Probation and Parole found that [Appellant] has failed to demonstrate motivation for success, he has refused to accept responsibility for the crimes he has committed, and he poses a risk to the community. Additionally, at the hearing, the [trial c]ourt learned that [Appellant] would reside with his wife in the city limits of Pottsville, Pennsylvania, where many youths and children reside. Moreover, [Appellant's] wife's residence is only approximately six blocks from [the victim's] residence. The [trial c]ourt cannot ignore the risk [Appellant] would pose to the community, and is especially concerned about the impact that releasing [Appellant] so close to [the victim] would have on her emotional and mental wellbeing.

(Trial Court Opinion at 6) (internal citations omitted).

Regarding the fifth statutory requirement, both Appellant and his wife testified that they would inform the court if Appellant had any material changes in his health. As for the sixth statutory requirement, both victims were given notice of Appellant's petition, and the hearing date.

After considering all of the statutory requirements, the court concluded:

The [trial c]ourt believes that [Appellant] has provided clear and convincing evidence proving all six of the requirements in this case.[3]   However, the [trial c]ourt possesses the discretion to grant or deny [Appellant's] petition even after the requirements have been proven.   The [trial c]ourt is tasked with weighing the [Appellant's] request to die in peace at his wife's residence vs. the victim's desire for justice, peace of mind, and freedom from the emotional pain and suffering she has experienced most of her life as a result of [Appellant's] crimes.   Therefore, it is with great reluctance that the [trial c]ourt denies [Appellant's] petition.

Two primary factors [guide] the [trial c]ourt's decision to deny the petition.   First, [Appellant] would reside with his wife in Pottsville, Pennsylvania if the [trial c]ourt were to grant the petition.   The [trial c]ourt's concerns stem from the fact that [Appellant] would be residing in an urban setting with limited supervision despite the Probation and Parole Board finding that [Appellant] is unrepentant and is a risk to the community.   Importantly, his wife's residence is near the residence of [the victim].   However, even if [Appellant] was to reside in a supervised inpatient setting, the [trial c]ourt would still deny the petition based on the impact granting the petition would have on the victims.

Secondly, the [trial c]ourt has concerns regarding the impact that granting the petition would have on the victims.   At the hearing, [the victim] was clearly emotional, and described the terrible impact that [Appellant's] conduct had on her life.   She testified about the struggle she faced to overcome the trauma [Appellant] inflicted on her, and how this trauma threatens to resurface due to the fear of [Appellant's] possible early release.   She has [had] to live with the horrible memory of [Appellant's] offenses for most of her life.   Granting [Appellant's] petition will cause [the victim] to suffer additional emotional distress and anguish.

_____

[3] We disagree with the trial court's statement that Appellant satisfied all six of the statutory requirements, as we conclude Appellant failed to prove the fourth requirement for the reasons the court stated above.  Nevertheless, an appellate court may affirm a trial court's decision on any ground without regard to the ground relied upon by the trial court itself.   *See* ***Commonwealth v. Singletary***, 803 A.2d 769, 772-73 (Pa.Super. 2002).

(Trial Court Opinion at 7-8) (internal citations omitted). Importantly, the court noted that it "cannot ignore the risk [Appellant] would pose to the community…." (*Id.* at 6). ***See also Folk***, ***supra*** (holding trial court did not abuse its discretion in denying petition for compassionate release where it determined, *inter alia*, that appellant's release would pose undue risk of danger to community). Based upon the foregoing, we see no abuse of discretion by the trial court in denying Appellant's petition for compassionate release. ***See Belknap, supra***; ***Folk, supra***. Accordingly, we affirm.[4]

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/05/2021

---

[4] We deny as moot Appellant's pending application to expedite disposition of this matter.